UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BOLIN, GARY DOMKE, and
MICHAEL PROCASKEY,

      Plaintiff,

v.

GENERAL MOTORS, LLC, a foreign
limited liability company,
UAW-GM CENTER FOR HUMAN
RESOURCES, a domestic nonprofit
corporation, and INTERNATIONAL
UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA
(UAW), a domestic nonprofit corporation,

      Defendants.

Case No. 16-13686
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER DENYING UAW-GM CENTER FOR HUMAN RESOURCES' MOTION TO DISMISS SECOND AMENDED COMPLAINT [48]**

---

After beginning their General Motors' careers working in automotive plants, Plaintiffs were "Special Assigned" to more desirable positions at the UAW-GM Center for Human Resources ("CHR"). Over ten years later, Plaintiffs were reassigned back to their home plants or new ones. They say that this decision was made due to their age. Therefore, they filed this lawsuit pursuant to federal and state age discrimination law.

After surviving a motion to dismiss by Defendant UAW, Plaintiffs were permitted to file a second amended complaint. (R. 44.) Now Defendant CHR has filed a motion to dismiss. (R. 48.)

For the reasons set forth below, the Court will DENY the motion.

# I.

The Court recites as fact the non-conclusory allegations of Plaintiffs' second amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

GM and UAW created CHR as a joint program through their collective bargaining agreement. (R. 44, PID 627.) CHR is a nonprofit corporation jointly funded by GM and UAW that provides for the development, coordination, and administration of programs designed to provide education and training to GM employees. (R. 44, PID 625, 627, 629–30.)

Plaintiffs John Bolin, Gary Domke, and Michael Procaskey began working for GM in the 1970s. (R. 44, PID 626.) In the 1990s, they were all assigned to the CHR by the UAW Vice President. (R. 44, PID 626, 633.)

UAW, CHR, and GM jointly controlled the work and working conditions of Plaintiffs after they were assigned to CHR. (R. 44, PID 632.) UAW or CHR provided the assigned employees instruction, supervision, evaluation, and assignments. (R. 44, PID 633–34.)

In September 2014, Cindy Estrada, the UAW Vice President, became a member of CHR's Executive Committee. (R. 44, PID 630.) This role entitled her to exercise the power and authority of the CHR Board of Trustees between Board meetings. (*Id*.) Estrada in her role as UAW VP or Executive Committee Member of the CHR (or both) was able to make personnel decisions regarding assignments to CHR. (R. 44, PID 634.)

In February 2015, Estrada made the decision to end Plaintiffs' assignments to CHR. (R. 44, PID 636.) She did so "in her role as the [UAW VP] alone." (*Id*.) It was her administrative assistants, however, who actually broke the news to Plaintiffs. (R. 44, PID 635.) Plaintiffs were informed that their special assignments to CHR were ending on March 1, 2015, after which they were to return

to their home plant or retire. (*Id.*) When Plaintiffs returned to their home plants, their pay decreased as much as 50% and their hours and working conditions were negatively affected. (*Id.*)

Since April 1, 2015, at least five of the vacated positions at CHR were filled with younger, and less-experienced, individuals. (R. 44, PID 638.)

In December 2015, each of the Plaintiffs prepared and submitted an Equal Employment Commission Intake Questionnaire with their complaint. (R. 44, PID 638–39.) They allege that their special assignments to CHR were terminated because of their age, in violation of the Age Discrimination and Employment Act ("ADEA") and Michigan's Elliot-Larson Civil Rights Act ("ELCRA").

## II.

Plaintiffs originally filed this action in October 2016. (R. 1.) UAW and CHR filed motions to dismiss. (R. 15, 16.) In response, Plaintiffs filed an amended complaint that mooted the motions to dismiss. (R. 27.) The UAW advised that it intended to seek dismissal of the amended complaint as well, which the Court allowed through supplemental briefing. UAW argued, in part, that Plaintiffs failed to adequately plead that UAW was Plaintiffs' joint employer, along with CHR and GM. (R. 30.) The Court agreed that Plaintiffs failed to sufficiently plead that UAW was a joint employer of Plaintiffs, but allowed Plaintiffs an additional opportunity to amend the complaint. (R. 42.) Plaintiffs took this opportunity. (R. 44.) Now, CHR has moved to dismiss claims against it. (R. 48.)

## III.

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard governs. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under that standard, a court first culls legal conclusions from the complaint, leaving only

factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Although this plausibility threshold is more than a "sheer possibility that a defendant . . . acted unlawfully," it is not a "'probability requirement.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

**IV.**

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1). Michigan's ELCRA also prohibits employment discrimination on the basis of age and is analyzed under the same framework as the ADEA. *Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012).

CHR asserts that Plaintiffs failed to allege that it was involved in the purported discriminatory employment action—the termination of Plaintiffs' special assignment to the CHR—and therefore Plaintiffs cannot sustain an action against it. According to CHR, joint employers are not vicariously liable for the activity of their co-employers. (*See* R. 48.) CHR says it is liable only if it, as opposed to GM or UAW, participated in the alleged discriminatory act. (*Id*.)

Plaintiffs respond by asserting that they have sufficiently pled that CHR was their joint employer, along with UAW and GM. (*See* R. 49.) Plaintiffs do not, however, respond to CHR's

argument that it is immaterial whether CHR is considered a joint employer if Plaintiffs failed to allege that CHR had any role in reassigning the Plaintiffs out of the CHR.

Neither party has it quite right. Plaintiffs are incorrect in asserting that being a joint employer is sufficient to establish liability for all joint employers. And CHR is incorrect in asserting that the only way it will be liable is if it engaged in the alleged discriminatory act.

The Court agrees with CHR that joint employers are not vicariously liable for the discriminatory conduct of a co-employer. While the Sixth Circuit has yet to address the precise issue, the Court is persuaded by other circuits that have done so. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228–29 (5th Cir. 2015); *Whitaker v. Milwaukee County, Wisconsin*, 772 F.3d 802, 811–12 (7th Cir. 2014); *Torres-Negrón v. Merck & Co.*, 488 F.3d 34, 41 n. 6 (1st Cir. 2007) ("[A] finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions"); *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1233–45 (11th Cir. 1998); *Virgo v. Riviera Beach Assoc.*, 30 F.3d 1350, 1359–63 (11th Cir. 1994) (holding that two companies were joint employers and therefore liable to the employee, but using agency principles to determine the extent of one employer's liability for the other employer's actions). Guided by the EEOC Compliance Manual on employment agencies and staffing firms (that can often be joint employers with the placement company), courts have found that a co-employer is liable only if it actually participated in the discrimination or—and this is the part CHR overlooks—"if it knew or should have known" about the discrimination and "failed to undertake prompt corrective measures within its control." *Whitaker*, 772 F. 3d at 811–12 (quoting EEOC, No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, at 2260 (1997) ("EEOC Guidance")).

While CHR wants the Court to solely focus on its actions, the Court cannot ignore the above authority pertaining to its omissions. Indeed, CHR cites to the very same EEOC Guidance. (R. 48, PID 731.) And every one of the cases to which CHR cites supports finding liability for a co-employer if the entity had the power to act but did not. *See Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), *aff'd sub nom. Lima v. Adecco &/or Platform Learning, Inc.*, 375 F. App'x 54 (2d Cir. 2010) ("[E]ven when a plaintiff establishes an entity's status as part of a joint employer, the plaintiff must still show 'that the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control'" (citing *Watson v. Adecco Empl. Servs., Inc.*, 252 F. Supp. 2d 1347, 1356–57 (M.D. Fla. 2003))); *Payton v. Aerotek, Inc.*, No. 15-12222, 2017 WL 1164522 (E.D. Mich. March 29, 2017) (granting defendant summary judgment because it did not have control over hiring and firing); *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244–45 (11th Cir. 1998) ("Both [single employer and joint employer] theories concentrate on the degree of control an entity has over the adverse employment decision"); *McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1272 (N.D. Ala. 2013) (quoting same language in *Llampallas*, 163 F.3d at 1244–45); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003) ("For a joint employer to be held liable for discriminatory conduct, a plaintiff must show that the joint employer knew or should have known of the conduct and failed to take corrective measures within its control.").[1] Absent a persuasive argument to find otherwise, the Court will follow the EEOC Guidance laying out two bases of co-employer liability.

---

[1] CHR also cites *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 995–96 (6th Cir. 1997), but that case analyzed the single-employer theory, not the joint-employer theory, and is therefore inapplicable.

The Court now turns to who was involved in the decision to end Plaintiffs' special assignments to CHR. Plaintiffs' pleadings make clear that the decision to end Plaintiffs' assignments to the CHR was made solely by Estrada, and made by her solely in her capacity as UAW VP. (R. 44, PID 636.) What is less clear, however, is whether Estrada in her capacity as Executive Committee Member of the CHR (or anyone else at CHR) knew about the decision and *could have* had a role in that decision yet failed to act to prevent the alleged discriminatory removal. Indeed, Estrada had formal positions at both UAW and CHR, so it is not implausible that CHR knew about the decision. (R. 44, PID 630.) And just because Estrada made the decision to remove Plaintiffs in her capacity as UAW VP does not necessarily mean that only the UAW VP had the authority to make that determination. Plaintiffs allege that Estrada made decisions including "who would or would not be special assigned to the CHR" in her role as the UAW VP "and/or" Executive Committee Member of the CHR.[2] (R. 44, PID 634.) So it is both a reasonable inference and plausible that if CHR could have a role in appointing people to CHR, it could have a role in removing people from that appointment. So Plaintiffs have plausibly pled that CHR "knew or should have known" about the age discrimination and "failed to undertake prompt corrective measures within its control." *Whitaker*, 772 F. 3d at 811–12; *Iqbal*, 556 U.S. at 679, 683.

Given that Plaintiffs have sufficiently pled that CHR could be liable if they were a joint employer, the Court must wade into whether Plaintiffs have sufficiently pled that CHR was a joint

---

[2] The Court will note that Plaintiffs' pleadings at times appear inconsistent. (*See, e.g.*, R. 44, PID 631–34.) But "a pleader may assert contradictory statements of fact" so long as the pleader is "legitimately in doubt about the facts in question." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996); *see also Mrla v. Fed. Nat'l Mortg. Assoc.*, No. 15-13370, 2016 WL 3924112, at *4 (E.D. Mich. July 21, 2016) ("[C]ourts have held that Rule 8(d)(3)'s 'alternative pleadings rule' does not cover inconsistent assertions of fact when the pleader holds the knowledge of which of the inconsistent facts is the true one.") The Court has no reason to believe Plaintiffs are pleading alternative facts despite knowing which facts are actually true.

employer. "One entity is the joint employer of another entity's formal employees, and thus liable under federal and state anti-discrimination laws, if the two 'share or co-determine those matters governing essential terms and conditions of employment.'" *Sanford v. Main St. Baptist Church Manor, Inc*., 449 F. App'x 488, 492 (6th Cir. 2011) (quoting *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985)). "The major factors in this determination are the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance." *Id*. (citing *Sanford v. Main St. Baptist Church Manor, Inc*., 327 F. App'x 587, 595 (6th Cir. 2009)). Other factors can include "the supervision of the employees' day-to-day activities . . . promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions.'" *Loewen v. Grand Rapids Med. Educ. Partners*, No. 10-1284, 2012 WL 1190145, at *4 (W.D. Mich. Apr. 9, 2012) (citing *W.W. Grainger, Inc. v. NLRB*, 860 F.2d 244, 247 (6th Cir. 1988)).

Here, Plaintiffs have pled facts sufficient to make it plausible that CHR was a joint employer. In particular, Plaintiffs pled that CHR, along with UAW and GM, "jointly exercised control over the work or working conditions of the Plaintiffs," that the UAW or CHR "provided day-to-day instructions, supervision, evaluation," set "day-to-day terms and conditions of employment," and that Estrada, in her role as "UAW VP and/or Executive Committee Member of the CHR" made personnel decisions regarding who would or would not be special assigned to the CHR. (*See* R. 44.) Because Plaintiffs have pled that CHR at least may have had a role in placement, supervision, terms and conditions, evaluation, and control over Plaintiffs' work, the Court finds that they have plausibly pled that CHR was a joint employer. And in so doing, and discussed above, they have plausibly pled CHR could be liable for the alleged discriminatory act. *See Iqbal*, 556 U.S. at 679, 683.

**V.**

For the foregoing reasons, CHR's motion to dismiss (R. 48) is DENIED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

Dated: May 4, 2018

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 4, 2018.

s/Keisha Jackson
Case Manager