UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BOLIN, GARY DOMKE, and
MICHAEL PROCASKEY,

    Plaintiffs,

v.

GENERAL MOTORS, LLC, a foreign
limited liability company,
UAW-GM CENTER FOR HUMAN
RESOURCES, a domestic nonprofit
corporation, and INTERNATIONAL
UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA
(UAW), a domestic nonprofit corporation,

    Defendants.

Case No. 16-13686
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

## OPINION AND ORDER
## DENYING UAW'S MOTION FOR SUMMARY JUDGMENT [53]

After beginning their General Motors' careers working in automotive plants, Plaintiffs were "Special Assigned" to more desirable positions at the UAW-GM Center for Human Resources ("CHR"). Over ten years later, Plaintiffs were reassigned back to their home plants or new ones. They say that this decision was made due to their age. So they filed this lawsuit pursuant to federal and state age-discrimination laws.

Prior to discovery on the merits, the UAW, International Union ("UAW") seeks summary judgment on the ground that Plaintiffs failed to exhaust the union's internal remedies before filing in federal court. (ECF No. 53.)

Because the UAW has not established that such exhaustion is required in this discrimination case, its motion for summary judgment will be DENIED.

## I.

### A.

GM and UAW created CHR as a joint program through their collective bargaining agreement. (ECF No. 44, PageID.627.) CHR is a nonprofit corporation jointly funded by GM and UAW that provides for the development, coordination, and administration of programs designed to provide education and training to GM employees. (ECF No. 44, PageID.625, 627, 629–30.)

Plaintiffs John Bolin, Gary Domke, and Michael Procaskey began working for GM in the 1970s. (ECF No. 44, PageID.626.) In the 1990s, they were all assigned to the CHR by the UAW Vice President. (ECF No. 44, PageID.626, 633.)

In February 2015, Plaintiffs were informed that their special assignments to CHR were ending on March 1, 2015, after which they were to return to their home plant or retire. (ECF No. 44, PageID.636.) Plaintiffs contend that this reassignment constitutes age discrimination in violation of the ADEA and ELCRA. (ECF No. 44.)

### B.

By virtue of their membership in the union, all three Plaintiffs are bound by the UAW Constitution. Article 33 of the UAW Constitution provides an internal union appeals procedure for all UAW members, including the right to appeal "any action, decision or penalty by . . . any administrative arm of the International Union, including its National Departments and Bargaining Councils." (ECF No. 16-9, PageID.156)). The exhaustion of the internal appeals process under Article 33 is mandatory for all UAW members:

> It shall be the duty of any individual or body, if aggrieved by any action, decision or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress.

(ECF No. 16-9, PageID.161.)

The UAW Constitution provides a specific appeals procedure for UAW members who protest their removal from "Special Assigned" positions by one of the UAW's national departments, including the UAW's GM Department. An appeal concerning "Special Assigned" appointments or removals ordinarily concludes at the International Executive Board, but an appeal which implicates violations of the UAW Ethical Practices Codes—such as allegations of discrimination—are subject to additional appellate review by the Public Review Board ("PRB"). (ECF No. 16-9, PageID.155)). The PRB is composed of members who are "impartial persons of good public repute not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies." (*Id.*)

**C.**

The UAW moves for summary judgment arguing that Plaintiffs were required to exhaust the union constitution's internal appeals process prior to filing their discrimination claims in federal court.

**II.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

When a party seeks summary judgment on a claim or defense for which it does bear the burden of proof at trial, such as the affirmative defense of a failure to exhaust, the moving party's initial summary-judgment burden is greater: it "must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) ("In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it" (internal quotation marks omitted)); Charles Alan Wright, et al., 10A Fed. Prac. & Proc. § 2727.1 (4th ed.).

### III.

The UAW contends that summary judgment is appropriate because Plaintiffs failed to first pursue their discrimination claims through the internal union appeal process, as required by the UAW Constitution. Before delving into the UAW's precise argument, some background on exhaustion in the labor context is helpful.

These exhaustion issues most often occur in cases arising under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, *et seq.* In these cases, employees sue their employers for violating the collective-bargaining agreement and their union for breaching the duty of fair representation in the handling of the employee's grievance against the employer. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983).

In *Republic Steel Corp. v. Maddox*, the Supreme Court found that, before an employee can bring a claim alleging a violation of a collective-bargaining agreement between his union and his

employer, that employee must first exhaust the grievance procedures established by the CBA. 379 U.S. 650 (1965). "The rule established by *Republic Steel* was [] intended to protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over the interpretation and application of collective-bargaining agreements." *Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 686–87 (1981).

More than a decade later, the UAW sought to extend *Republic Steel* to require that employees exhaust a union's internal process prior to bringing a § 301 suit against the union. *Clayton*, 451 U.S. at 692–96.

The Supreme Court was reluctant. "The contractual procedures we required the employee to exhaust in *Republic Steel* are significantly different from the procedures at issue here. In these cases, the Court is asked to require exhaustion of *internal* union procedures. These procedures are wholly a creation of the UAW Constitution. They were not bargained for by the employer and union and are nowhere mentioned in the collective-bargaining agreement that Clayton seeks to have judicially enforced." *Id*. at 687 (emphasis in original).

UAW argued that such an extension was still warranted because "[it] will enable unions to regulate their internal affairs without undue judicial interference," and "it will also promote the broader goal of encouraging private resolution of disputes arising out of a collective-bargaining agreement." *Id*.

The Court agreed, but only in part. "[T]he policy of deferring judicial consideration of internal union matters does not extend to issues 'in the public domain and beyond the internal affairs of the union.'" *Id*. at 688 (quoting *NLRB v. Marine Workers*, 391 U.S. 418, 426, n. 8 (1968)).

And Clayton's claim was based upon a breach of the union's duty of fair representation which "raises issues rooted in statutory policies extending far beyond internal union interests." *Id*.

But the Court found that the "aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over collective-bargaining agreements" did apply. *Id*. And it agreed with UAW that "a requirement that aggrieved employees exhaust internal remedies might lead to nonjudicial resolution of some contractual grievances." *Id*. But the Court still "decline[d] to impose a universal exhaustion requirement." *Id*. at 689. Instead, it held that courts have discretion to enforce the internal union procedures based upon whether those procedures could provide complete relief to the employee. *Id*. If so, then "exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes." *Id*. at 692. But if not, "national labor policy would not be served by requiring exhaustion of internal remedies." *Id*. at 693.

But this is not a § 301 case. Plaintiffs have not sued GM for violating any CBA and have not asserted that UAW breached any duty of fair-representation. Instead, Plaintiffs claim that UAW, and the other Defendants, in their capacity as employer, discriminated against them in violation of state and federal law.

To UAW's credit, it acknowledges this, and concedes that "the exhaustion requirement has not been frequently applied outside of the traditional duty of fair representation context." (ECF No. 53, PageID.906.) UAW argues that the Sixth Circuit "appears to have applied the exhaustion requirement in the civil rights context" in *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973). But that is not quite right. In *Marlowe*, the plaintiff brought Title VII claims against his employer and union and also brought a § 301 fair-representation claim against the union. *Id*. at 1059. And the court discussed the plaintiff's possible requirement to exhaust union remedies only in the

context of the § 301 claim. *Id.* at 1065–1066. So this is not a case where the Sixth Circuit applied exhaustion outside of the § 301 context and to discrimination claims more broadly. And while UAW contends that the circuits appear to be split on whether to require exhaustion of internal union remedies when an employee brings a Title VII claim as well as a § 301 claim, (ECF No. 53, PageID.908), that again ignores that this is not a § 301 case. And UAW points to no case where an employee has brought a civil-rights claim outside of § 301 and a court has required exhaustion of a union's internal remedies.

The path to extending these exhaustion requirements beyond § 301 is not clear. Indeed, the basis the Supreme Court used in *Clayton* for extending *Republic Steel* was § 301 collective-bargaining-agreement-based cases. *See Clayton*, 451 U.S. at 687 ("Our analysis, then, focuses on that aspect of national labor policy that encourages private rather than judicial resolution of *disputes arising over collective-bargaining agreements*") (emphasis added); *Chapman v. United Auto Workers Local 2005*, 670 F.3d 677, 682–83 (6th Cir. 2012) ("[*Clayton*] focused on one strain of national labor policy articulated in *Republic Steel*, the encouragement of 'private rather than judicial resolution of disputes arising over the interpretation and application of *collective-bargaining agreements*.'" (emphasis added)). Again, Plaintiffs do not claim breach of any CBA.

Recognizing the dearth of case law outside the § 301 context, UAW argues that the rationale underlying § 301 cases likewise applies to claims brought under Title VII. And given the ADEA's similarity to Title VII, *see Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996), the Court should find that these policy reasons compel the extension of *Clayton* to require exhaustion in this case.

Specifically, UAW points to hostile-work-environment cases where an employer is sued pursuant to respondeat superior (i.e., where the supervisor is the harasser). In those cases, courts

7

have recognized an affirmative defense where the employer exercised reasonable care to prevent and correct harassing behavior by adopting anti-discriminatory policies with internal complaint procedures and the employee unreasonably failed to take advantage of those procedures. *See, e.g.*, *Faragher v. City of Bocca Raton*, 524 U.S. 775, 807 (1998); *Vance v. Ball State University*, 570 U.S. 421, 424 (2013). This affirmative defense is based on two primary rationales: that the "primary objective" of Title VII "is not to provide redress but to avoid harm;" and that "[t]he requirement to show that the employee has failed in a coordinate duty to avoid or mitigate harm reflects an equally obvious policy imported from the general theory of damages." *Id.* at 806. UAW argues that these policy rationales should likewise be applied to Plaintiffs' ADEA claims such that the employees should be required to adhere to the union's exhaustion requirements.

The Court disagrees. First, these Title VII cases deal specifically with hostile work environments, not Title VII claims more broadly. Second, this defense is available only if the supervisor's harassment did not result in a tangible employment action. *Vance*, 570 U.S. at 424; *Faragher*, 524 U.S. at 807. Indeed, this is consistent with the policy rationales —encouraging employees to avoid or mitigate harm when such options are available and not punishing employers when internal remedies were made available to prevent harm. *Faragher*, at 805–807. But this is an age-discrimination claim—not a hostile work environment case. And, more significantly, a tangible employment action was taken here—Plaintiffs were removed from their preferred placements in the CHR. So the avoidance-of-harm rationale does not support a broad exhaustion requirement here.

Next, UAW argues that courts recognize a "general rule that a party seeking vindication of his or her civil rights must first exhaust administrative remedies before bringing a claim to federal court." (ECF No. 53, PageID.909.) As support, it cites *Goar v. Civiletti*, 688 F.2d 27 (6th Cir.

1982), and *Seidner v. Delair*, No. 89-2153, 1990 WL 118698 (6th Cir. Aug. 15, 1990). But *Goar* is a prisoner civil-rights case. And prisoners are required by statute to exhaust administrative remedies. 42 U.S.C. § 1997e(a). In *Seidner*, plaintiff brought a § 301 case against his union, as well as a related Title VII claim that his union refused to submit his grievance because of his religious beliefs. *Id*. at *1. Notably, the Sixth Circuit affirmed the district court's grant of summary judgment on the fair representation claims based upon Seidner's failure to exhaust his union's contractual and internal appeals processes. *Id*. But it affirmed the dismissal of the Title VII claims based upon Seidner's failure to exhaust administrative remedies under Title VII – and not because he failed to exhaust under the union's internal process. *Id*.; *see also Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 498 n. 12 (S.D.N.Y. 2000) (interpreting *Seidner* as dismissing the Title-VII claims based solely upon a failure to exhaust the EEOC requirement, provided by statute). So these cases do not establish a "general rule of exhaustion" for union members. Instead, they seek to enforce administrative exhaustion when it is required by statute. And this does not help UAW because the ADEA, like Title VII, requires administrative exhaustion through the EEOC, 29 U.S.C. § 626(d), which would have allowed the UAW to try to resolve the discrimination issue prior to litigation. Thus, the cases relied on by UAW do not suggest that civil-rights claims require the exhaustion of a union's internal appeals process.

Further, the other policy basis *Clayton* identified for requiring exhaustion—allowing unions to resolve internal union matters without judicial interference—also does not apply here. And UAW does not appear to so argue. Plaintiffs are not seeking to enforce rights created by the UAW Constitution. And they are suing entities other than the UAW. Plaintiffs allege that the UAW, GM, and CHR were all joint employers and are all implicated in this action. So this case does not solely concern an internal union issue. And courts have found that claims based upon

state or federal discrimination law extend beyond the internal affairs of the union. *See, e.g., Lopez v. Constr. & Bldg. Materials, Drivers, Helpers & Inside Emples. Union, Teamsters Local # 221*, No. 04-1028, 2006 U.S. Dist. LEXIS 1048, *22-23 (D. Minn. Jan. 13, 2006) (in a case that "involve[d] an employee suing an employer—that happens to be a union—for alleged racial discrimination under [a state statute] and 42 U.S.C. § 1981," court found plaintiff's "claims of discrimination 'are beyond the internal affairs of the union' and therefore do not give rise to a requirement to first exhaust internal union procedures."); *Scott v. Graphic Communs. Int'l Union, Local 97-B*, No. 02-00806, 2003 U.S. Dist. LEXIS 24985, *25-26 (M.D. Pa. Mar. 10, 2003) (rejecting union's argument that plaintiff's failure to follow union's internal complaint process was fatal to his claim and distinguishing *Clayton* because "[plaintiff's] complaint alleges deprivation of rights secured by statutes of the United States and the Commonwealth of Pennsylvania, not those of her union's constitution.")

In sum, the Court does not read *Clayton* to compel exhaustion of internal union remedies in a case alleging age discrimination under state and federal statutes against a union and other alleged joint employers.[1]

**IV.**

Although UAW raises a number of arguments, none require the Plaintiffs to exhaust the UAW constitution's appeal process. *Clayton* and it progeny are based upon federal labor policy that is inapplicable here. The claims do not appear to involve purely internal union matters. Title VII's harm-avoidance rationale in sexual harassment cases does not apply. And the "general rule

---

[1] The Court also notes that, in the fact section of its summary judgment brief, UAW cites cases in which employees challenging their removal from special-assigned positions went through the UAW appeals process. (ECF No. 53, PageID.901–903; ECF No. 53-4; 53-5; 53-6.) UAW does not incorporate these cases into its argument. And, in any event, they concern grievances pursuant to UAW anti-discrimination policy, and not federal anti-discrimination law. (See id.)

10

of administrative exhaustion" cuts against UAW because the ADEA provides such administrative remedies.

Without an established legal basis to enforce the constitutional appeals process under the somewhat unique facts of this case, the Court finds that UAW has not discharged its summary-judgment burden of establishing that, as a matter of law, Plaintiffs were required to exhaust their ADEA claims under the UAW constitution prior to filing in this court.[2]

For the reasons stated, UAW's motion for summary judgment (ECF No. 53) is DENIED.

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: January 13, 2019

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon the attorneys of record by electronic means on January 13, 2019.

s/William Barkholz
Case Manager to
Honorable Laurie J. Michelson

---

[2] In its reply, UAW states that "Plaintiffs appear to concede that they were required to exhaust the UAW's internal appeals process" before coming to court. (ECF NO. 55, PageID.1067.) The Court questions whether Plaintiffs would agree with this characterization. But exhaustion is an affirmative defense. So UAW bears the burden of proof and has to meet its summary judgment burden that Plaintiffs were required to exhaust even if Plaintiffs failed to respond to the argument.

11